# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| AKIF KHAN, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> KEN GARFF AUTOMOTIVE, LLC d/b/a BIG STAR HYUNDAI, <br><br> Serve registered agent at: <br> National Registered Agents, Inc. <br> 1999 Bryan Street, Suite 900 <br> Dallas, Texas 75201 <br><br> Defendant. | Case No.: 4:25-cv-00065 <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Akif Khan, individually, and on behalf of all others similarly situated, and for his Class Action Complaint against Defendant Ken Garff Automotive, LLC d/b/a Big Star Hyundai, states:

1. Plaintiff Akif Khan ("Plaintiff" or "Khan") brings this case to protect the privacy rights of himself and a class of similarly situated people who were sent text messages on their phones by Defendant Ken Garff Automotive, LLC d/b/a Big Star Hyundai ("Defendant" or "Big Star Hyundai"). Defendant repeatedly sent text messages to Khan and the putative class members after Khan and the putative class members expressly requested that Defendant stop sending them text messages. Defendant also sent text messages to Khan and the putative class members.

2. Khan also brings this case to protect the privacy interests of persons Defendant contacted in an attempt to sell its products and services, like Khan, despite their phone numbers being registered on the National Do-Not-Call Registry.

3. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA affords special protections for people who, like Khan, request to be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

5. The TCPA also affords protections for people who, like Khan, registered their phone numbers on the National Do Not Call Registry ("DNC List"). Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the DNC List is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

6. Since 2003, persons who register their cell phone numbers on the DNC List are "residential subscribers" for the purpose of 227(c)(5) and the DNC List. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

2

7. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Khan, frequently face. For example, in 2024 alone, approximately 52.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited January 6, 2025). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

9. This Court has personal jurisdiction over Defendant because Defendant directly targets its text message and general telephone marketing efforts to persons in Texas (like Khan), Defendant transacts business in the State of Texas and Defendant sells its products and services to persons in Texas.

10. Moreover, Defendant placed telephone solicitations to Khan from a phone number bearing an area code of "346" which is a Houston, Texas area code. These text messages were sent to Khan's cell phone which bears an area code of "469" which is also a Houston, Texas area code.

11. Defendant also placed the telephone solicitations at issue to Khan from its automobile dealership located in the suburbs of Houston, Texas.

12. In addition, Defendant has eight car dealerships in the State of Texas, six of which are in Houston or the Houston metropolitan area.

13. Accordingly, and for the reasons also stated below in this Complaint, Defendant purposefully and knowingly availed itself to the State of Texas and this district by making (or causing to be made), the offending telephone solicitations underlying this action.

14. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claim arose in this District.

## PARTIES

15. Khan is an individual who at all times material to this Complaint has been a citizen of the State of Texas and who continues to reside in the State of Texas.

16. Khan brings this action on behalf of himself, and all others similarly situated.

17. Defendant is registered in the State of Texas as a limited liability company organized under the laws of the State of Utah, and who at all times relevant to this Complaint, has been in good standing to transact business in Texas, and throughout the United States.

18. Defendant's business includes, but is not limited to, selling and purchasing automobiles from its automobile dealerships in nine states.

19. Defendant has eight automobile dealerships in the State of Texas, including a dealership called "Big Star Hyundai" which is in Friendswood, Texas, a suburb of Houston, Texas.

20. Defendant has six automobile dealerships in Houston or the Houston metropolitan area under the "Big Star" name.

21. Defendant's webpage for its "Big Star" dealerships is www.bigstarhouston.com.

22. Defendant aggressively markets its products and services, in part, through sending text message advertisements to consumers' cell phones with Texas area codes and other area codes throughout the United States.

### THE TELEMARKETING TEXT MESSAGES SENT TO KHAN

23. Khan is the owner of a cell phone. His phone number is 469-XXX-4372.

24. Khan registered his phone number on the DNC List on January 20, 2009, to protect his privacy interest of seclusion, namely, being left alone from unwanted telephone solicitation communications.

25. Khan's phone is a residential line that is used primarily for personal purposes, namely, to communicate with friends and family members.

26. Khan's cell phone account is held in his personal name.

27. On December 10, 2024, Khan spoke with a representative of Big Star Hyundai about an automobile for sale. As Khan was no longer interested in purchasing the vehicle, Khan advised the representative that he did not want to receive any further communications from Defendant. The representative confirmed that Defendant would no longer contact Khan.

28. On information and belief, the representative with whom Khan spoke was located at Big Star Hyundai during the phone call.

29. Despite advising Defendant that he did not want to receive any further communications and Defendant agreeing to no longer contact Khan, on December 11, 2024, Defendant sent Khan a text message from phone number 346-XXX-4168 (a Houston area code phone number) stating, "Big Star Hyundai: Welcome! Freq of msgs based on profile. Reply HELP for help, STOP to cancel. Msg & data rates may apply."

5

30. Khan did not request to receive text messages from Defendant, nor did any of Khan's friends or family members request that Defendant sent Khan text messages.

31. Per Defendant's instructions, Khan responded to the text message on December 11, 2024, stating, "Stop."

32. Defendant immediately responded to Khan's stop request by stating, "Big Star Hyundai: You've been unsubscribed and will no longer receive messages. For questions call 281-819-9400."

33. Despite Khan advising Defendant on two occasions to stop communicating with him and Defendant twice promising to no longer communicate with Khan, Defendant continued to communicate with Khan.

34. On December 11, 2024, Defendant sent Khan another text message. The text message stated, "Good morning your brother told me to reach out to you in regards about (sic) the ioniq leasing, can you call mw (sic) around 9am at 832-758-9443."

35. Khan's brother did not advise Defendant to contact Khan, nor did Khan himself provide Defendant permission to contact him. Rather, Khan had previously advised Defendant to stop communicating with him and Defendant agreed to stop communicating with Khan.

36. On December 11, 2024, at 9 a.m., Defendant sent three successive text messages to Khan.

37. The first 9 a.m. text message stated, "Big Star Hyundai: Welcome! Freq of msgs based on profile. Reply HELP for help, STOP to cancel. Msg & data rates may apply."

38. Khan did not request to receive text messages from Defendant, nor did any of Khan's friends or family members request that Defendant sent Khan text messages.

6

39. The second 9 a.m. text message stated, "Hi Abdullah or Ahsan, your appt is set for 4:00 PM on 12/11/2024 Big Star Hyundai 17990 Gulf Freeway, Friendswood, TX See you then! Reply C to confirm."

40. Khan made no such appointment nor did any of Khan's friends or family members. Rather, on information and belief, the text message was an aggressive marketing tactic to sell Khan an automobile. Again, Khan also did not provide consent to receive this communication from Defendant.

41. The third 9 a.m. text message stated, "Good morning, and Happy Holidays!! I'm Arnaldo New Car Sales Manager with Big Str Hyundai. I'm reaching out to confirm our appointment for today, are you still able to make it in? Reply "C" for a chance to with a $250 test drive gift card for the Holidays upon arrival."

42. Khan immediately responded to the 9 a.m. text messages by stating, "stop."

43. Defendant immediately responded to Khan's stop request by stating, "Big Star Hyundai: You've been unsubscribed and will no longer receive messages. For questions call 281-819-9400."

44. Each of the text messages Defendant sent Khan originated from phone number 346-XXX-4168.

45. The purpose of each of the text messages was to attempt to sell Khan one of Defendant's automobiles.

46. Defendant's conduct violated the privacy rights of Khan and the putative class members, as they were subjected to Defendant's annoying and harassing text messages. Defendant's texts intruded upon the rights of Khan and the putative class members to be free from invasion of their interest in seclusion.

47. Defendant's conduct caused Khan and the putative class members to waste time addressing and/or otherwise responding to the unwanted text messages.

48. On information and belief, Defendant sent text messages to Khan and the putative class members for the purpose of selling its products and services.

## Class Allegations

49. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Khan brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of Rule 23.

50. Khan seeks to represent the following classes:

**Internal DNC Class:** All persons in the United States from four years prior to the filing of this action through class certification to whom: (1) Defendant sent text messages in connection with the marketing of Defendant's products or services; (2) Defendant sent more than one text message to the person in a twelve-month period; and, (3) Defendant sent such text messages after the person requested that Defendant stop sending them text messages.

**National DNC Class:** All persons in the United States from four years prior to the filing of this action through class certification: (1) who received two or more calls or text messages during a 12 month period in connection with the marketing of Defendant's products or services; (2) whose number was registered on the DNC List for more than 30 days at the time the calls or texts were received; and, (3) whose number is registered to an individual and not a business.

51. Khan reserves the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

52. The members of the proposed classes are so numerous that joinder of all members is impracticable. Khan's counsel reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. Records of the phone numbers of the putative class members and the text message correspondence with the putative class members are readily identifiable through records available to Defendant.

53. Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

54. On information and belief, Defendant has texted and continues to text people who have requested that Defendant stop texting them, *i.e.*, to be placed on Defendant's internal do not call list. It is reasonable to expect that Defendant will continue to send such text messages absent this lawsuit. In addition, Defendant continues to communicate with people whose phone numbers are on the DNC List.

55. Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed classes include, but are not limited to:

    a. Whether Defendant sent text messages to Khan and the putative class members after they requested that Defendant no longer send them text messages;

    b. Whether Defendant communicated with Khan and the putative class members despite their phone numbers being registered on the DNC List;

    c. Whether Defendant's conduct violates 47 U.S.C. § 227(c);

    d. Whether the communications at issue were "solicitations" as defined by the TCPA;

    e. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,

    f. Whether Khan and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

56. Khan's claims are typical of the claims of the putative class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

57. Khan and his counsel will fairly and adequately protect the interests of the members of the proposed classes. Khan's interests do not conflict with the interests of the putative class members. Khan has retained lawyers who are competent and experienced in class action litigation, including TCPA litigation and consumer law.

58. Khan's counsel will vigorously litigate this case as a class action, and Khan and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

59. A class action is superior to numerous individual lawsuits for the resolution of this controversy. Joinder of all proposed members of the proposed classes in one action is impracticable if not impossible. Prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

60. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

61. Questions of law and fact, including the propriety of sending text messages to persons who requested that Defendant no longer text them, *i.e.*, to place them on Defendant's internal do not call list, predominate over questions affecting only individual members.

62. Questions of law and fact, including the propriety of calling persons whose phone numbers are on the DNC List, predominate over questions affecting only individual members.

63. Defendant has acted or refused to act on grounds that apply generally to the classes, making final injunctive relief or corresponding declaratory relief appropriate with respect to the putative class members.

### Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.* – Internal Do-Not-Call List Violations

64. Khan incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

65. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover up to $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

66. The regulations prescribed under Section 227(c) require companies like Defendant, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

67. These procedures must meet several minimum standards, including, but not limited to:

(1) ***Written policy.*** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) ***Training of personnel engaged in telemarketing.*** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) ***Recording, disclosure of do-not-call requests.*** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a

residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

**(4) *Identification of sellers and telemarketers.*** A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5) *Affiliated persons or entities.*** In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

**(6) *Maintenance of do-not-call lists.*** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

68. Defendant failed to maintain and/or implement these minimum standards by repeatedly sending telemarketing text messages to Khan and the putative class members after Khan and the putative class members requested that Defendant stop sending them text messages, and Defendant promised to abide by such requests.

69. In addition, the TCPA allows the Court to enjoin Defendant from sending text messages to phone numbers that should have been placed on Defendant's internal do not call list. *See* 47 U.S.C. §§ 227(c)(5)(A).

70. By sending text messages to the phones of Khan and the putative class members

after their numbers should have been placed on Defendant's internal do not call list, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

71.    Defendant knew or should have known that Khan and the putative class members did not wish to receive text messages as such persons expressly advised Defendant that they did not wish to receive text messages from Defendant, and Defendant promised it would no longer send such messages.

72.    Khan and the putative class members are entitled to damages of up to $500.00 per violation for each text message sent by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

## Demand for Judgment

WHEREFORE Plaintiff Akif Khan, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a.    Enter an order against Defendant Ken Garff Automotive, LLC d/b/a Big Star Hyundai pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing his as the class representative and appointing his counsel as class counsel;

b.    Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation of the TCPA, and up to $1,500 per violation of the TCPA if Defendant willfully violated the TCPA;

c.    Enter judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from sending text messages to persons who have requested that Defendant stop texting them;

  d. Award Plaintiff and the class all expenses of this action, and require that Defendant pay the costs and expenses of class notice and administration; and,

  e. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

### Count II - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.* – National DNC List Violations

73. Khan incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

74. The TCPA provides that is a violation of the law for a person whose phone number is registered on the DNC List to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

75. The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

76. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

77. By placing calls and texts to Khan and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

78. Defendant knew or should have known that Plaintiff's and the putative class members' phone numbers were registered on the DNC List.

79. Defendant willfully violated the TCPA when placing the communications to

14

Khan's and the putative class members' phones.

80.     Khan and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendant that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds Defendant willfully violated the TCPA.

## Demand for Judgment

WHEREFORE Plaintiff Akif Khan, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a.     Enter an order against Defendant Ken Garff Automotive, LLC d/b/a Big Star Hyundai pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing his as the class representative and appointing his counsel as class counsel;

b.     Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation of the TCPA, and up to $1,500 per violation of the TCPA if Defendant willfully violated the TCPA;

c.     Enter judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from communicating with persons whose phone numbers are registered on the DNC List;

d.     Award Plaintiff and the class all expenses of this action, and require that Defendant pay the costs and expenses of class notice and administration; and,

e.     Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*
Christopher E. Roberts SDTX #3708019
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700
CRoberts@butschroberts.com

*Attorneys for Plaintiff*